**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CIVIL ACTION NO. 1:14-CV-129** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **Approximately $16,500.00 in** | : | |
| **United States Currency,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is the motion (Docs. 14, 17) filed by Ernesto Ruiz, Eusebia Ruiz, and Ely Felix Ruiz (collectively, "the Ruizes"), seeking the return of property and the award of attorneys fees, litigation expenses, and interest, pursuant to Federal Rule of Criminal Procedure 41(g) and 28 U.S.C. § 2465(b)(1).  The Ruizes allege that the Drug Enforcement Administration ("DEA") seized $20,000 in United States currency from their safe deposit box and that, following an order (Doc. 12) of court directing the return of the seized property, the government failed to relinquish $3500 of the total amount seized.  For the reasons that follow, the court will deny the motion in its entirety.

## I.    Factual Background & Procedural History

The matter *sub judice* stems from the seizure by the DEA of a disputed amount of United States currency during the course of a criminal drug trafficking

investigation.[1]  On August 19, 2013, the Honorable Henry S. Perkin, United States

Magistrate Judge for the Eastern District of Pennsylvania, authorized a search

warrant for the Ruizes' safe deposit box at PNC Bank in Lancaster, Pennsylvania.

(Doc. 16-1, Ex. 1 ¶ 1 (DEA Report of Investigation); see Doc. 18-2 (Search Warrant)).

Two DEA agents, Special Agent Mark O'Donnell ("Special Agent O'Donnell") and

Task Force Officer Michael Neff ("Task Force Officer Neff"), arrived at PNC Bank

on August 20, 2013 to execute the warrant.  (Doc. 16-1, Ex. 1 ¶ 1 (DEA Report of

Investigation)).  PNC Bank contacted Ely Felix Ruiz ("Mr. Ruiz") and requested

that he deliver the key to the Ruizes' safe deposit box to facilitate the execution of

the warrant.  (Id.)  Mr. Ruiz complied, arriving within approximately one hour.

(Id. ¶ 2).  After reviewing the warrant, Mr. Ruiz stated that the safe deposit box held

"less than $20,000" and presented the key to the DEA agents.  (Id.)  The agents then

opened the safe deposit box, in the presence of Mr. Ruiz and the PNC Bank branch

manager.  (Id. ¶ 3).

Therein, the DEA agents found an undetermined quantity of United States

currency and a collection of miscellaneous documents.  (Id.)  The agents transferred

the currency from the safe deposit box into a self-sealing evidence bag, labeled

serial number ES000374724.  (Id.)  Mr. Ruiz signed the sealed evidence bag and

received a DEA-12 form, which stated that an "undetermined amount of US

---

[1] Pursuant to 21 U.S.C. § 881, the government may seize all property, money or conveyances acquired, used, or intended for use in violation of the Controlled Substances Act.  See 21 U.S.C. § 881(a); United States v. McGlory, 202 F.3d 664, 669 (3d Cir. 2000) (en banc).  The seized property may be subject to forfeiture through administrative or judicial proceedings. § 881(d).

currency" had been seized from the safe deposit box. (Id. ¶ 4; see Doc. 18-3 (Form DEA-12: Receipt for Cash or Other Items)).

According to the DEA Report of Investigation prepared by Special Agent O'Donnell, Special Agent O'Donnell and Task Force Officer Neff transported the sealed evidence bag containing the seized currency to the DEA Harrisburg Regional Office. (Doc. 16-1, Ex. 1 ¶ 5 (DEA Report of Investigation)). The agents placed the sealed bag "in an empty cabinet with a closed door located in an unused room" of the Regional Office. (Id.) Two days later, on August 22, 2013, Special Agent O'Donnell and Task Force Officer Neff transported the evidence bag from the Harrisburg Regional Office to the Counterdrug Joint Task Force Unit in Annville, Pennsylvania for the purpose of conducting an ion scan on its contents. (Id. ¶ 7). Special Agent O'Donnell opened the evidence bag, labeled ES000374724, in the presence of Task Force Officer Neff and Sergeant Scott Thornsberry ("Sergeant Thornsberry") and removed the currency located therein. (Id.) Sergeant Thornsberry conducted an ion scan and reported that the currency tested negative for the presence of narcotics. (Id.) Special Agent O'Donnell, witnessed by Task Force Officer Neff and Sergeant Thornsberry, returned the currency to evidence bag ES000374724 and re-sealed the bag. (Id.)

From there, Special Agent O'Donnell and Task Force Officer Neff transported the evidence bag to Dunbar Cash Vault Services ("Dunbar"), located in York, Pennsylvania, so that the seized currency could be counted and deposited. (Id. ¶ 8). At Dunbar, the teller removed the currency from the sealed evidence bag in the presence of Special Agent O'Donnell and Task Force Officer Neff. (Id.) The

3

count performed by the Dunbar teller revealed $16,500 in one hundred dollar bills. (Id.; see Doc. 16-1, Ex. 2 (Receipt from Dunbar Cash Vault Services)).  Special Agent O'Donnell then deposited $16,500 with the U.S. Marshals Service.  (Doc. 16-1, Ex. 1 ¶ 8 (DEA Report of Investigation); see Doc. 16-1, Ex. 3 (U.S. Marshals Service Deposit Receipt)).

In September 2013, the DEA initiated an administrative forfeiture proceeding against the currency.  (Doc. 17 ¶ 17; Doc. 18-4).  The DEA served written notice of the seizure and the administrative forfeiture proceeding on Mr. Ruiz on September 28, 2013.  (Doc. 17 ¶ 17; Doc. 18-4).  The DEA terminated that proceeding upon receipt of the Ruizes' timely filed claims, which contested the forfeiture and asserted that $20,000 in United States currency had been seized from their safe deposit box.  (Doc. 17 ¶ 19; Doc. 18-5; Doc. 18-6).

On January 24, 2014, the government commenced the instant civil forfeiture action by filing a verified complaint of forfeiture *in rem*, a declaration, a warrant for arrest *in rem*, and legal notice.  (Docs. 1-4).  The government sent copies of said documents by certified mail to the Ruizes and their counsel.  (Doc. 6).  On March 11, 2014, the Ruizes timely filed verified statements of interest in the seized currency. (Docs. 7-10).  Therein, the Ruizes asserted that the DEA agents seized $20,000, not $16,500, in United States currency from their safe deposit box.  (Docs. 7-10).  On March 28, 2014, the government moved to dismiss its complaint pursuant to Federal Rule of Civil Procedure 41(a)(2), stating that "upon review of the [Ruizes'] claims, the United States has determined that the defendant currency is the property of the claimants and is not subject to forfeiture."   (Doc. 11); FED. R. CIV. P. 41(a)(2).  The

court granted the motion on March 31, 2014, dismissing the action without prejudice and ordering the return of the seized property to the Ruizes.  (Doc. 12).

The Ruizes filed the instant motion (Doc. 14) on October 26, 2014, seeking the return of $3500, pursuant to Federal Rule of Criminal Procedure 41(g), and the award of fees, expenses, and interest, pursuant to 28 U.S.C. § 2465(b)(1).  On November 24, 2011, the government submitted a brief (Doc. 16) in opposition.  To correct a procedural error, the Ruizes filed an amended motion (Doc. 17) and a brief (Doc. 18) in support on November 29, 2014.[2]  The motion is fully briefed and ripe for disposition.

## II.   Legal Standard

### A.   Return of Property

An individual whose property has been seized by the government may file a motion under Federal Rule of Criminal Procedure 41(g)[3] to request its return.  FED. R. CRIM. P. 41(g); see United States v. Bein, 214 F.3d 408, 411 (3d Cir. 2000) (citing United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999)).  A district court may exercise jurisdiction over a motion for return of property even when no criminal proceedings are pending.  See United States v. Peloro, 488 F.3d 163, 172 (3d Cir. 2007).  The United States Court of Appeals for the Third Circuit has instructed that

---

[2] The Ruizes' amended filings (Docs. 17, 18), viewed collectively, are identical in substance to their original motion (Doc. 14).

[3] In 2002, Federal Rule of Criminal Procedure 41(e) was redesignated Rule 41(g), without substantive change.  See FED. R. CRIM. P. 41 advisory committee notes (2002 amendments).  Hence, the case law cited herein which refers to the former rule is equally applicable to Rule 41(g).  See United States v. Albinson, 356 F.3d 278, 279 n.1 (3d Cir. 2004).

"[s]uch an action is treated as a civil proceeding for equitable relief." <u>Id.</u> (quoting

<u>Bein</u>, 214 F.3d at 411); <u>see</u> <u>Chambers</u>, 192 F.3d at 376.

Generally, a Rule 41(g) motion will be denied if the claimant "is not entitled

to lawful possession of the seized property, the property is contraband or subject to

forfeiture or the government's need for the property as evidence continues."

<u>Chambers</u>, 192 F.3d at 377 (internal quotation marks omitted).  When the

government asserts that it does not possess the property sought, the district court is

required to undertake a two-part analysis.  <u>See</u> <u>United States v. Albinson</u>, 356 F.3d

278, 281 (3d Cir. 2004); <u>Chambers</u>, 192 F.3d at 377 ("[A] motion for return of property

is not rendered moot merely because the government no longer possesses the

seized property.").  First, the court "must determine . . . whether the government

retains possession of the property." <u>Albinson</u>, 356 F.3d at 281 (quoting <u>Chambers</u>,

192 F.3d at 378).  Second, if the court finds that the government is not in possession

of the property, it "must determine what happened to the property." <u>Id.</u> (quoting

<u>Chambers</u>, 192 F.3d at 378).

Rule 41(g) directs a district court to "receive evidence on any factual issue

necessary to decide the motion." Fed. R. Crim. P. 41(g).  The Third Circuit has

explained that an evidentiary hearing is required "only if needed to determine a

disputed fact necessary to the resolution of the motion." <u>Peloro</u>, 488 F.3d at 177

(quoting <u>Albinson</u>, 356 F.3d at 281).  Otherwise, "affidavits or documentary

evidence, such as chain of custody records, may be sufficient to support a fact

finder's determination." <u>Albinson</u>, 356 F.3d at 282.  In the absence of pending

criminal proceedings, the government bears the burden of producing evidence. <u>See</u>

Chambers, 192 F.3d at 377; Arevalo v. United States, No. 05-110, 2011 WL 442054, at *2 (E.D. Pa. Feb. 8, 2011).

### B.      Fees, Expenses, and Interest

The Civil Asset Forfeiture Reform Act ("CAFRA") provides that "in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for . . . reasonable attorney fees and other litigation costs[,] . . . post-judgment interest[,] . . . [and] in cases involving currency . . . an imputed amount of interest that such currency . . . would have earned."  28 U.S.C. § 2465(b)(1).  The Supreme Court has not defined "substantially prevails" within the context of CAFRA's recovery provisions.  The Court has stated that a prevailing party is generally one who has been awarded some relief by the court.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603 (2001).  The term does not include a party that has failed to secure a judgment on the merits.  Id. at 600, 603; see Sole v. Wyner, 551 U.S. 74, 82 (2007) (citing Hewitt v. Helms, 482 U.S. 755, 760 (1987)); e.g., United States v. 662 Boxes of Ephedrine, 590 F. Supp. 2d 703, 709 (D.N.J. 2008) ("[W]hile Claimants may eventually be entitled to remuneration for their expenses in contesting the seizure, their right to that payment will not arise until after they have prevailed on the merits.").  Rather, in order to prevail, a party must achieve a material "alteration in the legal relationship of the parties" that bears a "judicial imprimatur on the change."  Buckhannon, 532 U.S. at 604-05; see Sole, 551 U.S. at 82; United States v. Craig, 694 F.3d 509, 512 (3d Cir. 2012).  A mere "voluntary

change in conduct" by the opposing party is insufficient under this standard.  See Buckhannon, 532 U.S. at 605.

## III.   Discussion

### A.   Return of Property

The Ruizes allege that on August 20, 2013, the DEA seized $20,000 in United States currency from their safe deposit box.  (Doc. 17 ¶ 15).  Following the order (Doc. 12) of court dismissing this action and directing the government to return the seized property, the government relinquished $16,500 in United States currency to the Ruizes.  (Doc. 17 ¶¶ 35, 36).  In the instant motion, the Ruizes seek the return of the remainder of their property, which they claim to be $3500 in United States currency.  (Id. ¶¶ 39, 40).  Specifically, the Ruizes request that the court issue an order directing the government to return the outstanding balance of $3500 to their possession, pursuant to Federal Rule of Criminal Procedure 41(g).  (Id. ¶ 51); FED. R. CRIM. P. 41(g).

In response, the government argues that it seized a total of $16,500 in United States currency from the Ruizes' safe deposit box, which it later returned as instructed by the court.  (Doc. 16 at 4-5).  The government proffers documentary evidence to establish its chain of custody, from the seizure on August 20, 2013 through deposit with the U.S. Marshals Service on August 22, 2013.  (Doc. 16 at 5; Doc. 16-1, Exs. 1-3 (DEA Report of Investigation; Receipt from Dunbar Cash Vault Services; U.S. Marshals Service Deposit Receipt)).  The government additionally contends that the Ruizes have failed to substantiate their assertions that: (1) DEA agents seized $20,000, not $16,500, from their safe deposit box, and (2) a balance of

8

$3500 in United States currency to which the Ruizes are lawfully entitled is presently unaccounted for.  (Doc. 16 at 4-5).  The Ruizes offer no riposte in reply to the government's opposition papers.

To resolve the issue *sub judice*, the court will apply the principles enunciated by the Third Circuit in United States v. Chambers, 192 F.3d at 378 ("[T]he District Court must determine, in fact, whether the government retains possession of the property; if it finds that the government no longer possesses the property, the District Court must determine what happened to the property.").  In that case, the government was no longer in possession of the property sought by the claimant.  Id. at 375.  The matter before the court is distinguishable from Chambers because the parties dispute whether the government ever possessed the property at issue.  The Third Circuit has not directly addressed these circumstances, yet the touchstone of the holding in Chambers is applicable herein: if the district court finds that the government is not presently in possession of the property, it must make a factual determination based upon the evidence of record concerning "what happened to the property."  Id. at 378; see Peloro, 488 F.3d at 177 n.15 ("[E]ven where the ultimate availability of court-ordered relief is highly unlikely, this two-part Chambers inquiry offers certain beneficial effects in that (a) it may result in a finding that the government does, in fact, possess the property in question; or (b) it may result in other benefits to movants, individually and as a class—such as uncovering violations by government officers, identifying third parties in possession of the property, and encouraging accurate inventory-keeping by the government."

(internal quotation marks omitted)).   Furthermore, to meet its evidentiary burden,

"[t]he government must do more than state, without documentary support, that it

. . . [does not] possess[] the property." Chambers, 192 F.3d at 377-78; see United

States v. Hernandez, No. 4:95-CR-0296-001, 2006 WL 618429, at *2 (M.D. Pa. Mar. 9,

2006) (finding that the government satisfied its Rule 41(g) burden of production by

submitting material DEA records and declarations). But see Ferreira v. United

States, 354 F. Supp. 2d 406, 411 n.1 (S.D.N.Y. 2005) (declining to apply the Rule 41(g)

burden of production to the government where claimant "failed to establish the

threshold issue of [property] ownership").

The court has considered the parties' submissions and carefully reviewed the

evidence of record.  The government submits the following documents: (1) a DEA

Report of Investigation, prepared by Special Agent O'Donnell, detailing the August

20, 2013 search and seizure executed at PNC Bank and establishing the chain of

custody for the seized currency, (Doc. 16-1, Ex. 1); (2) a receipt from Dunbar,

entitled "BAC Seized Currency," indicating that on August 22, 2013, a Dunbar teller

counted $16,500 in one hundred dollar bills, (id., Ex. 2); and (3) a U.S. Marshals

Service deposit receipt, labeled "Dunbar," showing that on August 22, 2013, the

DEA deposited $16,500 in "seized currency" with the U.S. Marshals Service,

(id., Ex. 3).  The Ruizes proffer the following materials: (1) a search warrant, issued

on August 19, 2013, authorizing the DEA to search the Ruizes' safe deposit box,

(Doc. 18-2); (2) a DEA-12 form, delivered by Special Agent O'Donnell and Task

Force Officer Neff to Mr. Ruiz on August 20, 2013, indicating that an "undetermined

amount of US currency" was seized from Mr. Ruiz's safe deposit box and removed

to sealed evidence bag ES000374724, (Doc. 18-3); (3) a DEA Notice of Seizure, mailed to Mr. Ruiz on September 23, 2013, (Doc. 18-4); (4) the Ruizes' Request to Contest Forfeiture, filed with the United States Attorney General on October 26, 2013, (Doc. 18-5); (5) the Ruizes' Petition for Remission or Mitigation, filed with the United States Attorney General on October 26, 2013, (Doc. 18-6); and (6) various docket entries from the instant litigation, (Docs. 18-7 to 18-11).

As a threshold matter, the court finds that the government has satisfied its burden of production.  See Albinson, 356 F.3d at 282; Chambers, 192 F.3d at 377-78. Specifically, the government submits documentary evidence which verifies the chain of custody for the contested currency and undergirds the government's position that the DEA agents seized $16,500, not $20,000, from the Ruizes' safe deposit box.  Of particular avail is the DEA Report of Investigation prepared by Special Agent O'Donnell, who possessed first-hand knowledge of the events at issue.  (Doc. 16-1, Ex. 1).  Notably, the report provides complete chronological documentation of the transfer, storage, testing, and final deposit of the seized currency between the dates of August 20 and August 22, 2013.  (Id.)

On the present record, the court finds that the government does not possess the $3500 claimed by the Ruizes.  See Chambers, 192 F.3d at 378.  The court further concludes that the government seized $16,500, not $20,000, from the Ruizes' safe deposit box, the totality of which has since been returned.  See id.  Accordingly, the court finds no basis for ordering the return of $3500 to the Ruizes under Federal Rule of Criminal Procedure 41(g).  FED. R. CRIM. P. 41(g).  The Ruizes are unable to direct the court to any objective evidence of record to demonstrate that the DEA

seized $20,000 in United States currency from their safe deposit box. Indeed, the only evidence supporting this version of events is the Ruizes' conclusory declarations. Moreover, by declining to file a reply brief, the Ruizes have offered no response to the government's cogent evidence of record. In sum, the court concludes that the Ruizes cannot establish their entitlement "to lawful possession of the . . . property" as they have failed to rebut the government's proof that the claimed property was never seized. Chambers, 192 F.3d at 377.

### B. Fees, Expenses, and Interest

The Ruizes petition the court for attorneys fees, litigation expenses, and interest, pursuant to 28 U.S.C. § 2465(b)(1). In their supporting brief, the Ruizes posit the following: "It is clear that Movants substantially prevailed on the claims filed and are therefore due from the United States costs, fees, expenses, and interest . . . ." (Doc. 18 at 10). The Ruizes provide no legal or factual support for this *ipse dixit* assertion. The government opposes the Ruizes' motion in its entirety, but fails to offer any response to their claim for attorneys fees, litigation expenses, and interest. (See Doc. 16).

As noted *supra*, the language of CAFRA explicitly requires that a claimant "substantially prevail" in a civil proceeding to forfeit property in order to be entitled to its recovery provisions. § 2465(b)(1). Ostensibly, the Ruizes presume that the government's voluntary dismissal of this action without prejudice, coupled with the order of court directing the return of the seized currency, secures their status as a substantially prevailing party. However, district courts addressing factually similar cases have held that such claimants cannot "substantially prevail" for purposes of

§ 2465(b).  See, e.g., United States v. Thirty-Two Thousand Eight Hundred Twenty

Dollars & Fifty Six Cents ($32,820.56) in U.S. Currency, No. C13-4102-LTS, 2015 WL

3385003, at *2-4 (N.D. Iowa May 22, 2015) (finding dismissal without prejudice, in

addition to the return of claimant's property, insufficient to merit an award of fees

under CAFRA); United States v. Any and All Funds on Deposit at JP Morgan Chase

Account No. 31442003, No. 12 Civ. 7530(GBD), 2013 WL 5511348, at *5 (S.D.N.Y Oct.

2, 2013) ("Here, the Government's voluntary dismissal of the complaint, although it

results in the unfreezing of Claimant's funds, does not result in a judicially

sanctioned change in the legal relationship of the parties."); United States v. 2007

BMW 335i Convertible, 648 F. Supp. 2d 944, 952 (N.D. Ohio 2009) (denying

claimant's motion for fees following dismissal without prejudice and explaining that

"[n]othing. . . precludes the [g]overnment from filing the same complaint at some

point in the future"); United States v. $13,275.21, More or Less, in United States

Currency, No. SA–06–CA–171–XR, 2007 WL 316455, at *4 (W.D. Tex. Jan. 31, 2007)

(applying Buckhannon, 532 U.S. 598, in holding that dismissal without prejudice

does not entitle a claimant to "substantially prevailing" party status under CAFRA).

In United States v. Craig, the Third Circuit addressed a request for interest

pursuant to § 2465(b)(1) following a dismissal without prejudice.  694 F.3d 509.  The

claimant therein achieved a return of property pursuant to Federal Rule of

Criminal Procedure 41(g) while separately agreeing to the government's voluntary

dismissal of its civil forfeiture action without prejudice.  Id. at 512.  The court held

that the claimant had not substantially prevailed, reasoning that he had "obtained

neither a judgment on the merits nor any relief specific to the forfeiture action."  Id.

Applying the foregoing authority to the matter *sub judice*, the court concludes that the Ruizes do not qualify as a "substantially prevailing" party under CAFRA. § 2465(b)(1).  The government voluntarily dismissed the instant action without prejudice, an outcome which does not constitute an "enforceable judgment[] on the merits."  Buckhannon, 532 U.S. at 604; see Craig, 694 F.3d at 512; 662 Boxes of Ephedrine, 590 F. Supp. 2d at 709.  The court finds no support for the Ruizes' assertion that they have substantially prevailed in the instant litigation.  Hence, the Ruizes' request for attorneys fees, litigation expenses, and interest will be denied.

**IV.     Conclusion**

For all of the foregoing reasons, the Ruizes' motion (Docs. 14, 17) for the return of property and for the award of attorneys fees, litigation expenses, and interest will be denied.  An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      June 30, 2015